708 So.2d 1199 (1998)
STATE of Louisiana
v.
Anthony J. ROBERTS.
No. 97-KA-959.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 1998.
*1200 Paul A. Connick, District Attorney, Gretna, for Plaintiff-Appellee Terry M. Boudreaux.
Bruce G. Whittaker, Gretna, for Defendant-Appellant.
Before GRISBAUM, BOWES and DUFRESNE, JJ.
DUFRESNE, Judge.

STATEMENT OF THE CASE
On August 22, 1996, the Jefferson Parish District Attorney filed a bill of information charging defendant, Anthony Roberts, with one count of aggravated burglary (LSA-R.S.14:60) and one count of attempted aggravated rape (LSA-R.S.14:27-:42). The case was assigned district court number 96-5196. Defendant was arraigned on September 17, 1996, and pled not guilty to both charges. On November 12, 1996, defendant filed a Motion to Appoint Sanity Commission to Determine Competency to Stand Trial. The trial court granted defendant's motion on November 15, 1996. The trial court held a sanity hearing on January 16, 1997, and found defendant competent to stand trial.
On February 24, 1997, the state filed a second bill of information under the same case number, charging defendant with aggravated battery (LSA-R.S.14:34) using a belt with studs. On the same day, defendant was arraigned as to the new charge, and pled not guilty.
On March 18, 1997, the state amended the original bill of information to change the alleged date of the attempted aggravated rape. On the same day, defendant waived his right to a jury trial, and a judge trial commenced as to all three charges. The trial continued on March 19, 20, 21, and 31. On March 31, 1997, the trial judge found defendant not guilty of aggravated burglary, guilty of attempted forcible rape (LSA-R.S.14:27-:42.1), and guilty of aggravated battery.
On April 14, 1996, defendant filed a motion for new trial, alleging the evidence at trial was insufficient to support a conviction for attempted forcible rape. The trial court heard and denied the motion on May 14, 1997. Defendant indicated he was ready for sentencing, and the trial court sentenced him that day to serve twenty years for the attempted forcible rape, and ten years for the aggravated battery. The court further ordered that the sentences be served concurrently.
On May 14, 1997, the state filed an habitual offender bill of information, alleging defendant *1201 to be a second felony offender. On May 20, 1997, defendant filed a motion to reconsider sentence. On May 28, 1997, defendant filed a response to the multiple bill of information and a motion to quash. The motion to reconsider sentence was heard and denied on June 11, 1997.
A multiple bill hearing was held on July 2, 1997, and the court found defendant to be an habitual offender. On July 11, 1997, the court vacated defendant's original sentence for attempted forcible rape, and imposed an enhanced sentence of twenty years without probation or suspension of sentence. The judge further indicated that the sentence was to "be served flat."
Defendant filed a timely motion for appeal on July 11, 1997. The motion was granted on August 1, 1997.

FACTS
Sarah Kanellos, a twenty-four-year-old commercial painter, lives in a house owned by her mother at 2132 Hickory Avenue in Harahan. Ms. Kanellos testified at trial that she has known defendant, Anthony Roberts, since she was fifteen or sixteen years old, and that they have dated each other off and on since that time. Defendant moved into the Hickory Avenue residence in May 1996. According to Ms. Kanellos, defendant vacated the premises in the early part of June 1996 after he exhibited some violent behavior.
When Ms. Kanellos arrived home at 10:16 p.m. on August 2, 1996, she parked her car in the driveway. As she began to exit the vehicle, defendant grabbed her by her hair. He dragged her into the house, screaming obscenities at her. Defendant appeared to be intoxicated. Among other things, defendant accused her of seeing other men. Defendant threw Ms. Kanellos on the floor, grabbed her by the arm, and dragged her around the living room floor. She testified that he dropped her on her head, then kicked her repeatedly in her ribs and back, and attempted to break her arm over his leg. At one point defendant forced Ms. Kanellos into her bedroom and tried to strangle her with his hands. She grabbed a knife lying nearby, and he immediately took it away from her. Ms. Kanellos testified that defendant threatened her with the knife, stating he would kill her and members of her family. Defendant threw her onto the bed, pushed her legs so that her knees reached her face, and pulled her shorts down a bit. He unzipped his pants, and began to thrust his erect penis against her. Defendant threatened to penetrate her anally. She resisted him with all her strength. Ms. Kanellos testified that she does not know whether or not defendant's penis was exposed.
According to Ms. Kanellos, defendant found two belts in her bedroom. He wrapped a studded belt around his wrist and repeatedly hit her with it. He swung the other belt at her, striking her on her back. Defendant also threatened her with a pair of scissors. At various intervals, defendant left the bedroom and went to the living room to watch television. He then returned to the bedroom, where he continued to hit her and scream obscenities at her. Defendant threatened to hurt her if she left the bedroom. Finally, at about 2:00 a.m. on August 3, defendant went to sleep on a sofa in the living room. Ms. Kanellos believed he still had the knife.
Ms. Kanellos decided to leave the house at 6:00 a.m. Defendant, who was still sleeping on the sofa, awoke and asked her where she was going. She told him she was going to see a doctor. He warned her not to come home late again that evening. Ms. Kanellos went to the Jefferson Parish Sheriff's Office to report the incident and was referred to the Harahan Police Department. Sergeant Raymond Marzilli of the Harahan Police took Ms. Kanellos' statement at about 8:30 a.m. Later that morning, Ms. Kanellos accompanied officers to the residence, where Sgt. Marzilli arrested defendant. Ms. Kanellos identified him as the man who had attacked her.
Marzilli conducted a search of Ms. Kanellos' residence, and found the knife defendant had used to threaten the victim. Marzilli also recovered the two belts with which defendant struck Ms. Kanellos, and a note of apology defendant had written to Ms. Kanellos. Ms. Kanellos testified that she found a box containing defendant's clothing and other *1202 belongings in her bedroom, and that the box was not there prior to the incident. An ambulance was called to Ms. Kanellos' residence. Emergency medical technicians applied a splint to her injured arm. She refused transport to a hospital, and instead transported herself to Memorial Medical Center. She received treatment for lacerations and a sprained arm.
Defendant testified that he was still living with Ms. Kanellos on August 2, 1996. He spent the afternoon that day drinking in a bar, and smoking crack cocaine. He was angry with Ms. Kanellos that evening because she came home much later than expected, and he suspected her of seeing other men. Defendant admitted to striking Ms. Kanellos and yelling obscenities at her. He further admitted to hitting her with a belt, but denied hitting her with the studded belt. Defendant stated that he did have Ms. Kanellos' knife during the confrontation, but that he threatened to hurt only himself with it. He admitted to making gashes in a wall with the knife. According to defendant, he intended to use the scissors to trim his beard. Defendant stated that he did not try to break Ms. Kanellos' arm, but that she injured it when she fell against the wooden arm of the sofa..
Defendant testified that he and Ms. Kanellos had always had a stormy relationship, and it was their usual practice to fight, then to reconcile and engage in sexual relations. Defendant stated that after his anger subsided on the night of August 2, he went into the bedroom, apologized to Ms. Kanellos, then had consensual sex with her. As evidence of his continuing relationship with Ms. Kanellos, defendant introduced two checks written by his father and dated on July 21 and July 29, 1996. (Defense Exhibits Two and Three). These checks were purportedly used to pay the electricity bill for Ms. Kanellos' house, and Ms. Kanellos' automobile insurance.
Defendant produced several witnesses to support his assertion that he was living with Ms. Kanellos at the time of the incident. Aubrough Wade Fuselier testified that defendant had worked for him in his concrete business from June 6 until July 26, 1996. Fuselier stated that during that period, he gave defendant daily rides to work. Fuselier sometimes picked defendant up at Ms. Kanellos' house on Hickory. Defendant's father, Septine Roberts, testified that during June and July of 1996, defendant lived with Ms. Kanellos. Jared Faulk, a longtime friend of defendant's testified that he knew defendant to be living with Ms. Kanellos during June and July of 1996. Faulk stated that he telephoned defendant at the Hickory Avenue residence on the night before defendant was arrested.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in excluding evidence of the victim's past sexual behavior with the defendant which evidence would have tended to prove that the victim consented to the allegedly sexually assaultive behavior.

DISCUSSION
By this assignment, defendant complains that his constitutional right of confrontation was compromised when the trial court denied him the opportunity to cross-examine the victim, Ms. Kanellos, about her prior acts of physical violence against him. During the cross-examination, defense counsel attempted to question Ms. Kanellos as to whether she had attempted to throw defendant out of a car during some past altercation. The state objected to the question on the basis that it was irrelevant. The trial court sustained the state's objection based on LSA-C.E. art. 404 A, which provides that, except under limited circumstances, evidence of a person's character, or of a particular character trait, is inadmissible to prove that a person did or did not do a particular act on a particular occasion.
Subparagraph A(2) provides an exception to the general rule where evidence of a pertinent character trait of the victim is offered as tending to prove that the victim acted or did not act in a particular way at the time of the charged offense (as when the defendant seeks to prove that the victim was the first aggressor). That subparagraph provides a further exception where the defendant and victim are involved in a domestic relationship with a history of violence, and the defendant pleads self-defense. In such an instance, the defendant may introduce evidence of specific *1203 conduct to show the dangerous character of the victim. The trial court did not find that either of these exceptions applied. Defendant now contends that the testimony in question was admissible under LSA-C.E. art. 412, which provides, in pertinent part:
B. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
The Sixth Amendment of the United States Constitution and Art. I, § 16 of the Louisiana Constitution of 1974 guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346. Cross-examination is the primary means by which veracity of a witness is tested. State v. Hillard, 398 So.2d 1057 (La.1981), appeal after remand, 421 So.2d 220 (La.1982); State v. Carter, supra. However, the extent of cross-examination is not without limitation. In order for evidence to be admissible at trial, it must be relevant. The determination concerning relevancy of the tendered evidence, and therefore the scope and extent of cross-examination, is within the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion. State v. Garrison, 400 So.2d 874 (La.1981); State v. Carter, supra.
An accused also has a constitutional right to present a defense. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Hamilton, 441 So.2d 1192 (La.1983); State v. Carter, supra. However, this right does not require a trial court to admit evidence that is irrelevant or whose probative value is substantially out-weighed by other legitimate considerations in the administration of justice. State v. Carter, supra.
"Relevant evidence" is defined in LSA-C.E. art. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible, except as otherwise provided by the state and federal constitutions, or by other legislation. LSA-C.E. art. 402. Even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." LSA-C.E. art. 403.
It does not appear that the trial court erred in ruling that the testimony defendant sought to elicit was irrelevant, and was improper character evidence. Defense counsel argued at trial that his purpose in eliciting the testimony was to illustrate the violent nature of the relationship between Ms. Kanellos and defendant, and to thereby attack the victim's credibility. The evidence was not relevant for this purpose, as defendant did not assert that Ms. Kanellos acted violently toward defendant on the night of August 2. The probative value of the evidence at issue would have been outweighed by its prejudicial effect.
The trial court properly ruled that the questions constituted improper character evidence under LSA-C.E. art. 404 A, since defendant did not plead self-defense, nor did he claim that Ms. Kanellos in any way provoked his attack on the night of August 2. This line of questioning does not, as defendant claims, fall under the exception in LSA-C.E. art. 412 B(2), since the alleged incident did not involve the victim's past sexual behavior with defendant[1]. The question at issue referred only to the victim's alleged violent behavior.
In the instant case, defendant's own testimony was cumulative of what he apparently *1204 hoped to prove through his questioning of Ms. Kanellos: that his relationship with her was a turbulent, and sometimes violent one. Moreover, defendant was allowed extensive cross-examination of the victim, and had ample opportunity to impeach her testimony. Defendant does not show that he was prejudiced by the trial court's ruling. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court imposed an excessive sentence.

DISCUSSION
Defendant complains that his enhanced sentence of twenty years for attempted forcible rape is constitutionally excessive. It is first noted that defendant did not file a motion to reconsider sentence following the imposition of his enhanced sentence.[2] LSA-C.Cr.P. art. 881.1 provides that a defendant may file a motion to reconsider sentence within thirty days of sentencing. The article requires that the motion be made orally at the time of sentencing[3], or in writing, and that it set forth the specific grounds on which the motion is based. The failure to file a motion to reconsider sentence, or to state the specific grounds on which the motion is based, precludes the defendant from raising those grounds on appeal. State v. Mims, 619 So.2d 1059 (La.1993); State v. Holmes, 94-907 (La.App. 5 Cir. 3/15/95), 653 So.2d 642. Defense counsel did state an oral objection at the time of the multiple bill sentencing, but failed to state specific grounds for his objection. In State v. Mims, supra, the Louisiana Supreme Court was silent as to whether the failure to comply with article 881.1 precludes even a claim of constitutional excessiveness. In an abundance of caution, we will consider the merits of defendants claim. See State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, writs denied, 97-1050 (La.10/13/97), 703 So.2d 609, 97-1255 (La.10/13/97), 703 So.2d 612.
Defendant asks this Court to consider that the victim was a "long-time live-in girlfriend", and that the offensive act involved only his "bumping" his groin against her vaginal area while remaining clothed. The past relationship between defendant and Ms. Kanellos does not, however, make the act any less serious than if the two had been strangers. Defendant took Ms. Kanellos by surprise at her home, then repeatedly hit her and threatened to rape her.
Defendant further complains that the trial judge made his sentence even more burdensome by ordering that it be served "flat", i.e., without the benefit of "good time." Because defendant was convicted of attempted forcible rape, designated as a "crime of violence" by LSA-R.S. 14:2(13), the court was entitled to restrict or deny defendant's eligibility for diminution of sentence for good behavior under LSA-C.Cr.P. art. 890.1.
For the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE (ERRORS PATENT)
Also assigned as error are any and all errors patent on the face of the record.
The record reflects that the trial judge failed to advise defendant of the time delay for filing for post-conviction relief, as is mandated by La.C.Cr.P. art. 930.8 C. This article dictates that, except under certain limited circumstances, a defendant must file his application for post-conviction relief within three years after his judgment of conviction. Section C provides that the trial judge shall inform defendant of this prescriptive period at the time of sentencing. However, the failure to inform defendant is not a ground for vacating the sentence. Rather, the remedy is to remand the case with an instruction to the trial judge to inform defendant of the provisions of article 930.8 by sending written notice to defendant within ten days after the *1205 rendition of this opinion and to file written proof in the record that defendant received such notice. State v. Birden, 675 So.2d at 1190-1191; State v. Crossley, 94-965 (La. App. 5th Cir. 3/15/95), 653 So.2d 631, 636-637, writ denied, 95-0959 (La.0/15/95), 660 So.2d 459.
Accordingly, we hereby affirm defendant's conviction and sentence. We remand with an instruction to the trial judge to inform defendant of the provisions of La.C.Cr.P. art. 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice.
AFFIRMED AND REMANDED.
NOTES
[1] "Past sexual behavior" is defined by LSA-C.E. art. 412 F as "sexual behavior other than the sexual behavior with respect to which the offense of sexually assaultive behavior is alleged."
[2] Defendant did file a motion to reconsider sentence following the imposition of his original sentences. That motion was heard and denied on June 11, 1997.
[3] An oral objection at the time of sentencing, where the specific grounds for the objection are stated, is the equivalent of an oral motion to reconsider sentence. State v. Young, 94-2256, p. 3 (La.App. 1 Cir. 12/15/95), 665 So.2d 175, 176, writ granted, 96-0195 (La.4/26/96), 672 So.2d 686, affirmed, 96-0195 (La.10/15/96), 680 So.2d 1171.