986 So.2d 130 (2008)
STATE of Louisiana
v.
Lukas LEMEUNIER.
No. 07-KA-230.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
*132 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Roger W. Jordan, Jr., Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Martin E. Regan, Jr., Thomas Calogero, Karla M. Baker, Regan & Associates, P.L.C., New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Defendant/appellant, Lukas Lemeunier ("Lemeunier"), was charged with aggravated burglary in violation of LSA-R.S. 14:60 and possession of methadone in violation of LSA-R.S. 40:967(C). The State dismissed count 2, possession of methadone, and Lemeunier was then tried on the aggravated burglary charge. A unanimous twelve-person jury found him guilty as charged, and he was later sentenced to fifteen years in the Department of Corrections.
Thereafter, the State filed a multiple offender bill of information alleging Lemeunier to be a second felony offender based on a prior conviction for possession with intent to distribute marijuana. Lemeunier stipulated to the allegations contained in the multiple bill and was sentenced *133 to twenty-five years at hard labor as a multiple offender.
Regarding the events on the date of the incident, Larry Rolling ("Mr. Rolling") testified at trial that, at approximately 10:30 p.m. on September 2, 2003, his wife, Sharlene Rolling ("Mrs. Rolling"), woke him up and told him someone was outside the house. Mr. Rolling went to the front room and looked outside but did not see anyone. He opened the front door at which time a hand came through the door and started spraying pepper spray. Mr. Rolling dropped to his knees and attempted to hold the door closed while Mrs. Rolling called 911. When the perpetrator heard Mrs. Rolling calling the police, he fled. Mr. Rolling did not get a look at the intruder.
Officer Matthew Pervis ("Officer Pervis") and Officer Dominick Rodi ("Officer Rodi") of the Kenner Police Department responded to the call. Officer Pervis, who was in another unit, went to the Rolling residence while Officer Rodi checked out the area for suspects. Officer Rodi saw a man, later identified as Lemeunier, dressed in all dark clothing enter a vehicle about two blocks from the residence and drive away. Lemeunier, the driver, did not put the headlights on. After he failed to signal a turn, Officer Rodi activated his emergency lights and attempted to stop the vehicle. According to Officer Rodi, the car did not stop until another police unit approached from the opposite direction. Lemeunier and his passenger, co-defendant Kenneth Oswald, were detained and placed in the back of a police unit. Officer Rodi did not interview the victims.
Officer Pervis responded to the 911 call. When he arrived at the Rollings' home, he could feel the effects of the pepper spray inside the doorway. He obtained a description of the perpetrator from Mrs. Rolling, which was disseminated over the radio. In the 911 call, Mrs. Rolling identified the perpetrator as "Luke," a person who must know her daughter.
Lemeunier was transported to lockup and strip searched. Officer Ronald Reggio participated in the arrest. He testified that, when Lemeunier pulled down his underwear, a can of mace fell from his crotch area.
Mrs. Rolling testified she had previously met Lemeunier at her daughter's home on more than one occasion. She further noted he had come to the house a few days before the incident, but she thought he was crazy or drunk, and she slammed the door in his face. On the night of the incident, Mrs. Rolling saw the perpetrator outside before the door was opened. When his arm reached into the house spraying pepper spray, she noted he had on a dark glove. She stated that Lemeunier kept saying he wanted her pain medication. Mrs. Rolling was brought to the scene where Lemeunier was held and positively identified him as the person who tried to break into her home.
At trial, Lemeunier testified he had been buying prescription pain pills from Mrs. Rolling and her daughter for three to four years. He explained he would "just go right in the house," buy the pills, and leave. He stated he had last been to Mrs. Rolling's house only two to three days before the incident.
Lemeunier testified that, on the night of the incident, he and his friend went to Mrs. Rolling's house to buy pills. He was driving his girlfriend's car, and her key chain had a mace spray on it. According to Lemeunier, he walked up to the Rollings' front door and knocked. Mr. Rolling answered the door with a gun in his hand and yelled at him not to come to the house so late. Mrs. Rolling then came to the door at which time Lemeunier told her he had just come to buy pills. Mrs. Rolling *134 responded by stating she was calling the police. Lemeunier testified that Mr. Rolling was pointing the gun directly at him so he sprayed the mace in Mr. Rolling's direction in order to get away. He stated he left in his car and was stopped by the police shortly thereafter. Lemeunier denied getting his hand or arm shut in the door and maintained the entire incident happened on the front porch of the Rollings' home. Lemeunier testified that he did not have a mace can in his pants.
Lemeunier argues the evidence is insufficient to support his conviction for aggravated burglary. However, we find that all the elements of the crime of aggravated burglary were established by the evidence. Specifically, the record shows that Lemeunier made an unauthorized entry into the victims' home with the intent to commit a felony or theft while armed with a dangerous weapon and, additionally, that he committed a battery on Mr. Rolling during the entry.
Lemeunier first contends that the State failed to prove beyond a reasonable doubt that he entered the house and that he used pepper spray inside the house.
Aggravated burglary is defined as the unauthorized entering of any inhabited dwelling with the intent to commit a felony or any theft therein, if the offender is armed with a dangerous weapon, or commits a battery upon any person while in such place, or while entering or leaving the place. LSA-R.S. 14:60.[1] Whenever any part of defendant's person passes the line of the threshold, entry is accomplished. It is sufficient that any part of the person intrudes into the structure, even momentarily.[2]
Lemeunier urges that the State failed to prove an entry. He asserts that Mrs. Rolling was not credible because she gave many conflicting statements and her testimony was riddled with inconsistencies. According to Lemeunier, Mrs. Rolling's call to the 911 operator contradicts her trial testimony and shows he never entered the house but, rather, remained outside with Mr. Rolling. The tape of the 911 call introduced at trial refutes this position. In the very beginning of the call, Mrs. Rolling advises the 911 operator that someone is trying to break into her house and that "their arms are in my house." Mrs. Rolling initially referred to the perpetrator in the plural until the 911 operator asked how many people were involved to which Mrs. Rolling clarified there was only one. She explains that the perpetrator is on her front porch, trying to break in, and her husband is trying to hold him off. Additionally, Mrs. Rolling gave a statement to the police the night of the incident, which was written down by Officer Purvis. In the statement, Mrs. Rolling stated the perpetrator pushed the door open, "got one of his arms inside the door[,] and sprayed us with pepper spray." At trial, Mrs. Rolling again stated Lemeunier had his arm in the door. She explained his arm, up to his elbow, was in the door and that when she called the police, Lemeunier pulled his arm back and ran. Mr. Rolling corroborated his wife's testimony.
Lemeunier argues the victims are not credible because, among other things, Mrs. Rolling testified that he (Lemeunier) demanded drugs, while Mr. Rolling stated Lemeunier did not say anything. Mr. Rolling testified that he was on the ground *135 concentrating on keeping the door shut. Additionally, he was feeling the effects of the pepper spray that had been sprayed into the house. It is reasonable to conclude that Mr. Rolling did not hear Lemeunier's demands.
Although Lemeunier denied having his hand in the door and claimed he remained outside the home the entire time, the jury obviously believed the victims' testimony. The trier of fact can accept or reject, in whole or in part, the testimony of any witness.[3] In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a requisite factual conclusion.[4] It is not the appellate court's function to re-evaluate the credibility choices made by the jury.[5]
Lemeunier suggests the State failed to prove that he was armed with mace or committed a battery upon the victims. He argues the police officers' testimony that they found a can of pepper spray during the strip search was implausible. He also asserts there was no evidence he sprayed the pepper spray at the victims or that it was even sprayed inside the home.
The testimony of Mr. and Mrs. Rolling establishes Lemeunier had a can of pepper spray in his hand and sprayed the mace into the house. The arresting and booking officers testified that a can of mace dropped from Lemeunier's crotch area during a strip search. Lemeunier claims it is unrealistic to believe the police found a can of pepper spray during the strip search because he was wearing baggy shorts and boxers that would not allow him to conceal the can in his crotch area. Nonetheless, he admitted in his own testimony that he had a can of pepper spray at the time he approached the house. Under Louisiana law, a dangerous weapon is any gas, liquid, or other substance or instrumentality, which in the manner used, is calculated or likely to produce great bodily harm or death. LSA-R.S. 14:2. Our courts have found a can of mace to be a dangerous weapon.[6] The testimony supports the jury's finding that Lemeunier was armed with a dangerous weapon at the time he made an unauthorized entry into the Rollings' home.
In addition, the evidence shows that Lemeunier committed a battery during the unauthorized entry. Mr. Rolling testified that the perpetrator started spraying pepper spray when his hand came through the door and that some of the spray got on his face and started to burn. Mrs. Rolling told the 911 operator that Lemeunier was spraying her husband. The responding police officer testified he could feel the effects of pepper spray in the house as he walked through the front door and as far back as the kitchen, stating that he suffered shortness of breath and burning, watering eyes within thirty seconds of entering the house. At trial, Lemeunier admitted spraying mace in the direction of Mr. Rolling, even though he claimed it was in self-defense. The jury obviously chose not to believe Lemeunier's self-defense claim. Spraying pepper spray toward another in such close proximity that the effects of the spray reach the intended victim is the "intentional use *136 of force or violence" required for a battery.
Under the facts of this case, a rational trier of fact could have found beyond a reasonable doubt that the evidence, viewed in the light most favorable to the prosecution, established that Lemeunier committed the crime of aggravated burglary, satisfying the Jackson[7] standard of review.
Lemeunier next contends the trial court erred in admitting evidence pertaining to the drugs found in his car and on his person, as well as the can of mace discovered near the passenger in his car. In this same assignment of error, he asserts the trial judge impermissibly limited his right to confront his accusers and present a defense by limiting his cross-examination of Mrs. Rolling.
The record shows evidence of the prescription drugs found in Lemeunier's car was first admitted into evidence with no objection. When a defendant fails to lodge a contemporaneous objection to a witness's testimony, he waives his right to assert the error on appeal. LSA-C.Cr.P. art. 841(A). An objection made after the evidence is before the jury comes too late.[8]
Lemeunier contends that the evidence regarding the can of mace found near his passenger was irrelevant. At trial, the State presented the testimony of Officer Michael Becnel ("Officer Becnel"), who stated he transported the passenger of Lemeunier's car, Kenneth Oswald ("Oswald"), to lockup. Officer Becnel testified he found a can of mace on the seat of the police unit where Oswald was sitting when they arrived at lockup. Lemeunier objected to the testimony on the basis of relevancy, arguing that his passenger was not charged with aggravated burglary and had nothing to do with his case. The trial court found the evidence was res gestae and, thus, admissible.
Relevant evidence is any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." LSA-C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. LSA-C.E. art. 403. The trial judge's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion.[9] Furthermore, a verdict will not be reversed because of the erroneous admission of irrelevant evidence if the reviewing court determines that the error was harmless beyond a reasonable doubt.[10] Harmless error exists where the guilty verdict actually rendered was surely unattributable to the error.[11]
Lemeunier admitted going to the victims' house for purposes of buying drugs, admitted having a can of mace, and admitted spraying the mace at one of the victims. The victims testified that he pushed his arm through the door in an attempt to get inside the house.
In this case, the jury's verdict was surely unattributable to the alleged error. Lemeunier's testimony regarding his alleged *137 attempt to buy drugs and his possession and use of the mace, along with the victims' testimony, was more than sufficient to convict under the Jackson standard, and Lemeunier has failed to demonstrate how he was prejudiced.
Next, Lemeunier claims he was denied his right to confront his accusers and present a defense when the trial court limited his cross-examination of Mrs. Rolling regarding her prescription medication records to a six-month time period prior to the incident. On direct-examination, it was established that the victim, Mrs. Rolling, had two prior surgeries and receives treatment at pain management clinics. On cross-examination, Lemeunier elicited that Mrs. Rolling has a prescription for and takes Hydrocodone. He also established that Mrs. Rolling's daughter abuses and illegally obtains prescription drugs.
Lemeunier then sought to question Mrs. Rolling about her personal prescription drug history, apparently in order to suggest that she abused and/or sold pills with her daughter. When the State objected to the relevancy of the questioning, Lemeunier argued it had impeachment value because Mrs. Rolling told the police she did not have any pills on the night of the incident while her prescription drug records showed she received 300 Hydrocodone pills the month before the incident. The trial court ruled that Lemeunier could question Mrs. Rolling about her prescription drug records for the six months prior to the incident, to which ruling Lemeunier objected.
Both the Louisiana and United States Constitutions guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. However, the right to confrontation is not so unlimited as to require that a defendant be allowed, on cross-examination of a State witness, to make any and all inquiries of whatever character. The inquiry must be relevant.[12]
The determination regarding the relevancy of tendered evidence and, therefore, the scope and extent of cross-examination, is within the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion.[13] Although an accused also has a constitutional right to present a defense, this right does not require a trial court to admit evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. LSA-C.Cr.P. art. 403.[14]
On appeal, Lemeunier fails to show the relevance of Mrs. Rolling's prescriptions beyond the period to which he was limited. The trial court granted him much leeway to explore this evidence, and Lemeunier conducted an exhaustive cross-examination on the issue. Further, allowing Lemeunier unbridled latitude in this area would have caused undue delay in the trial and been a waste of time within the rationale of LSA-C.Cr.P. art. 403. As the trial court stated, Lemeunier was attempting to put the victim on trial. The trial court did not err in *138 limiting the scope of Mrs. Rolling's cross-examination.
In other assignments of error, Lemeunier urges that the trial court erred in allowing Dr. Melvin Schultz ("Dr. Schultz") to testify in this case while denying the production of Mrs. Rolling's medical records and in failing to declare a mistrial.
Lemeunier argues the trial court erred in allowing the testimony of Dr. Schultz, Mrs. Rolling's treating physician, without allowing him to obtain Dr. Schultz's medical records pertaining to the victim. Lemeunier asserts he was unable to effectively cross-examine Dr. Schultz without access and reference to the medical records and, therefore, was denied his ability to present a defense and confront witnesses. He claims Dr. Schultz was non-responsive on cross-examination because he could not answer certain questions pertaining to his treatment of Mrs. Rolling.
In brief, Lemeunier asserts his position, but fails to include argument or any legal citation in support thereof. According to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. Restating an assigned error in brief without argument or citation of authority does not constitute briefing.[15] This assertion presents nothing for our review. That portion of the assignment of error has been abandoned.
Lemeunier urges that the trial court erred in denying his motion for a mistrial.
Dr. Schultz testified that, at the time of trial, he had been Mrs. Rolling's physician for several months. He stated that she has severe, chronic pain problems and can only be treated by alleviating the pain. The doctor found nothing unusual in her prescription records.
Following Dr. Schultz's testimony, defense counsel moved for a mistrial, alleging that the doctor's answers to questions on cross-examination "based upon the grounds that I believe that I believe [sic] that my right to cross-examine him has been curtailed and that my right to present a defense has been curtailed." On appeal, Lemeunier urges that "the doctor's answers to the questions on cross examination exhibited a pattern on [sic] non-responsiveness" and argues that the court should have granted a mistrial under LSA-C.Cr.P. art. 775.
A mistrial is a drastic remedy and, except in instances where a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial.[16] Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion.[17] Under Article 775, a mistrial shall be ordered when "prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial."
Lemeunier simply asserts that Dr. Schultz's non-responsive answers prevented him from receiving a fair trial and in this argument merely repeats his earlier assertion that he was prevented from adequately *139 cross-examining Dr. Schultz because he lacked medical records.
A review of Dr. Schultz's testimony does not support Lemeunier's assertion that this witness's answers were nonresponsive, or that any of Dr. Schultz's responses were prejudicial. Rather, Lemeunier was unable to obtain the answers he wanted. He was able to fully cross-examine Dr. Schultz, and the medical records he wanted were irrelevant. In point of fact, the relevancy of the entire line of questioning, including the requested information, is highly questionable. Relevant evidence is that which tends to prove or negate the commission of the offense and the intent to commit the offense. LSA-C.E. art. 401.[18] Despite Lemeunier's continual efforts to suggest otherwise, Mrs. Rolling was the victim in this case of an aggravated burglary. Her medical history, condition, and treatment are completely irrelevant to the elements of the offense with which Lemeunier was charged.
We find no grounds on which a mistrial could have been based. These assignments of error are without merit.
Lemeunier also complains that he received an illegal sentence. He contends his twenty-five-year enhanced sentence as a multiple offender is excessive, asserting that the trial court failed to state reasons for the sentence under LSA-C.Cr.P. art. 894.1, failed to consider mitigating factors, and failed to tailor the sentence to fit the facts of the case.
Lemeunier stipulated to his status as a second felony offender. As a result, the trial court vacated his original fifteen-year sentence and re-sentenced him to twenty-five years at hard labor. The record shows the twenty-five-year enhanced sentence was the result of the stipulation to the multiple bill. The waiver of rights form advised Lemeunier that he faced a sentencing range of fifteen to sixty years as a second felony offender and that he would receive a twenty-five-year sentence. Additionally, the transcript of the hearing wherein Lemeunier was advised of his multiple bill rights shows the trial court specifically advised him that he would be sentenced to twenty-five years as a result of his stipulation to the multiple bill. Lemeunier indicated he understood his sentence.
Under LSA-C.Cr.P. art. 881.2(A)(2), a defendant "cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This Court has consistently recognized that this article precludes a defendant from seeking review of an enhanced sentence to which the defendant agreed.[19] Because Lemeunier received a sentence that was "imposed in conformity with a plea agreement which was set forth in the record at the time of the plea," he is barred from challenging the excessiveness of his multiple offender sentence on appeal.[20]
Lemeunier next argues he is entitled to a new trial on the basis he has been denied the right to a meaningful appellate review of his conviction and sentence because transcripts from two court appearances are missing from the record. He specifically refers to two minute entries, dated January 13, 2004 and May 17, 2004, for which there are no corresponding transcripts. *140 The court reporter filed a letter into the record indicating the transcripts from January 14, 2004 and May 17, 2004 were lost to Hurricane Katrina. Lemeunier contends he has a right to a complete transcript of the trial proceedings and that his appellate counsel's ability to render effective assistance of counsel has been severely hampered because of the missing transcripts.
A criminal defendant has the right to a complete transcript of the trial proceeding particularly where, as here, appellate counsel was not counsel at trial.[21] The interests of justice require that a defendant be afforded a new, fully recorded trial where a defendant's attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform his appellate counsel duties.[22] LSA-R.S. 13:961(C) provides that, in criminal cases tried in the district courts, the court reporter shall record all portions of the proceedings required by law and shall transcribe those portions of the proceedings required. LSA-C.Cr.P. art. 843 provides, in pertinent part, that, in felony cases, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders and charges by the court, and objections, questions, statements and arguments of counsel.[23]
Material omissions from trial court proceedings bearing on the merits of an appeal require reversal.[24] However, a slight inaccuracy in a record or inconsequential omission from it which is immaterial to a proper determination of the appeal does not require reversal of a defendant's conviction.[25] An incomplete record does not entitle a defendant to relief absent a showing of prejudice based on the missing portions of the transcript.[26] The determination of whether the omissions are material must be made on a case-by-case basis. The critical inquiry is whether the defendant's right to judicial review guaranteed by La. Const, art. I, § 19 can be performed or is the record so inadequate that the defendant's constitutional right to judicial review is prejudiced.[27]
The two missing transcripts of which Lemeunier complains are not from the trial proceedings but, rather, relate to the withdrawal of appointed counsel and to certain pre-trial discovery matter. The January 13, 2004 minute entry shows that appointed defense counsel, William Doyle, withdrew as counsel, Lemeunier was represented by Frank DeSalvo, and the pre-trial motion hearing was continued at Lemeunier's request. Lemeunier argues that, without a transcript of this proceeding, his appellate counsel has no way to ascertain what matters were addressed at this hearing. Although the minute entry does not state what pre-trial motion was scheduled to be heard on that date, it clearly shows the matter was continued, at Lemeunier's request, and no evidentiary *141 matters were handled on that date. Thus, Lemeunier's right to judicial review of all the evidence is not compromised by the lack of transcript.
The May 17, 2004 minute entry indicates the trial court heard discovery related matters at that time. The trial court first heard the State's motion for discovery to which Lemeunier responded he had no other evidence that the State did not already have in its custody. The trial court also considered Lemeunier's request for the issuance of a subpoena duces tecum for the victims' prescription records. According to the minute entry, the State provided the trial court with a copy of the requested records for an in-camera inspection, and the trial court stated it would rule on the motion at trial. Additionally, the trial court set a return date for another subpoena duces tecum.
Lemeunier asserts he is prejudiced by the missing transcript relating to the production of records because the records were crucial to his defense. He contends the trial court made a ruling on material evidence and, therefore, the absence of a transcript of the proceeding prevented appellate counsel from performing his duties and prevents this Court from conducting an adequate judicial review.
The minute entry does not indicate the trial court ruled on Lemeunier's request for the prescription records on that date. Instead, the trial court indicated that it would conduct an in-camera inspection of the records and issue a ruling at trial regarding his entitlement to the requested records. Lemeunier does not designate the trial court's decision to conduct an in-camera inspection of the prescription records or its decision to delay a ruling until trial as errors on appeal. Thus, he cannot demonstrate prejudice resulting from the failure of the record to contain a transcript of a discussion of the pre-trial discovery matter.[28] We further note that the record is replete with complete transcripts relating to discussions and arguments about the victims' prescription records. It is apparent from the record that Lemeunier ultimately received the requested prescription records of the victims.
This assignment of error has no merit.
We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920 and find none that require corrective action.
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Also see, State v. Guillard, 04-899, pp. 9-10 (La.App. 5 Cir. 4/26/05), 902 So.2d 1061, 1070, writ denied, 05-1381 (La.1/13/06), 920 So.2d 233.
[2] State v. Arceneaux, 05-338 (La.App. 5 Cir. 12/27/05), 930 So.2d 44 (citing State v. Smith, 02-1018 (La.App. 5 Cir. 3/11/03), 844 So.2d 119).
[3] State v. Delagardelle, 06-898 (La.App. 5 Cir. 4/11/07), 957 So.2d 825, 830, writ denied, 07-1067 (La. 11/21/07), 967 So.2d 1154.
[4] State v. Benoit, 07-35 (La.App. 5 Cir. 5/29/07), 960 So.2d 279, 284.
[5] Id.
[6] See, State v. Harris, 42,376 (La.App. 2 Cir. 9/26/07), 966 So.2d 773; State v. Johnson, 31,390 (La.App. 2 Cir. 3/31/99),730 So.2d 1035.
[7] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
[8] See, State v. Allen, 06-778 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 756.
[9] State v. Sosa, 04-507 (La.App. 5 Cir. 12/12/06), 948 So.2d 236.
[10] State v. Weatherspoon, 06-539 (La.App. 5 Cir. 12/12/06), 948 So.2d 215, writ denied, 07-0462 (La.10/12/07), 965 So.2d 398.
[11] Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
[12] State v. Jones, 02-908 (La.App. 5 Cir. 2/25/03), 841 So.2d 965, 976, writ denied, 03-0895 (La.9/26/03), 854 So.2d 345.
[13] State v. Roberts, 97-959 (La.App. 5 Cir. 2/25/98), 708 So.2d 1199 (citing State v. Garrison, 400 So.2d 874 (La. 1981) and State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346).
[14] See also, State v. Mosby, 595 So.2d 1135, 1138 (La. 1992); State v. Pugh, 02-171 (La. App. 5 Cir. 10/16/02), 831 So.2d 341, 351.
[15] State v. Fernandez, 03-987 (La.App. 5 Cir. 12/30/03), 864 So.2d 764 (citing State v. Inzina, 31,439 (La.App. 2 Cir. 12/9/98), 728 So.2d 458).
[16] State v. Paul, 05-612 (La.App. 5 Cir. 2/14/06), 924 So.2d 345.
[17] Id.
[18] State v. Bowen, 01-594 (La.App. 5 Cir. 12/26/01), 806 So.2d 749, writ denied, 02-0264 (La. 10/25/02), 827 So.2d 1170.
[19] State v. Moore, 06-875 (La.App. 5 Cir. 4/11/07), 958 So.2d 36.
[20] See, State v. Hines, 07-312 (La.App. 5 Cir. 10/30/07), 970 So.2d 1134 and State v. Moore, supra.
[21] State v. Landry, XXXX-XXXX (La.6/29/99), 751 So.2d 214.
[22] State v. Cambre, 05-888 (La.App. 5 Cir. 7/25/06), 939 So.2d 446, writ denied, 06-2121 (La.4/20/07), 954 So.2d 158 (citing State v. Ford, 338 So.2d 107, 110 (La. 1976)).
[23] State v. Cambre, supra, at 457.
[24] State v. Boatner, 03-485 (La. 12/3/03), 861 So.2d 149; State v. Gant, 06-232 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, writ denied, 06-2529 (La.5/4/07), 956 So.2d 599.
[25] State v. Boatner, supra.
[26] State v. Boatner, supra.
[27] Id.
[28] See, State v. Bright, 03-489 (La.App. 5 Cir. 10/28/03), 860 So.2d 196, writ denied, 03-3409 (La.4/2/04), 869 So.2d 875.