SUSAN M. CHEHARDY, Judge.
 

 | yin this appeal, defendant seeks review of his second degree battery conviction and sentence. For the following reasons, we affirm.
 

 On January 7, 2009, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jean Boiteux, with second degree battery in violation of La.
 
 *732
 
 R.S. 14:34.1. Defendant was arraigned on May 29, 2009, and pled not guilty. On April 19, 2010, the State amended the charge in the bill of information to aggravated battery, in violation of La. R.S. 14:3d.
 
 [1]
 
 Trial commenced before a six-person jury on June 1, 2010. After hearing testimony and evidence, the jury unanimously found defendant guilty of the responsive verdict of second degree battery on June 2, 2010.
 
 [2]
 
 On June 24, 2010, the trial judge sentenced defendant to five years at hard labor. Defendant now appeals his conviction and sentence.
 
 [3]
 

 |
 
 ¿Facts
 

 At trial, Marie-Lucie Cleronay testified that she had been in a relationship with Jean Boiteux since 2001 and they have two living children. Further, she stated that she and Boiteux had cohabitated since 2003. In August of 2007, they moved into a house in Harvey, Louisiana. Ms. Clero-nay testified that, on December 19, 2008, her children’s father, Jean Boiteux, struck her with a metal pipe on the left forearm, sprayed her in the face with pepper spray, and struck her with a leather belt.
 

 Ms. Cleronay stated that, early on the morning of December 19, 2008, at approximately 3:30 to 4:00 a.m., Boiteux came into their children’s room where she was sleeping. Boiteux woke her up to complain about her cooking and cleaning skills. Not wanting to wake the children, Ms. Clero-nay left the room and walked to the kitchen, and Boiteux followed her, berating her as they went. Then, Boiteux left for work abruptly.
 

 A short time later, Boiteux returned to the house, entered the children’s room, pulled Cleronay out of bed and said, “I’m going to make you forget the 911 number.” Ms. Cleronay ran to the garage, where defendant threw a cup of tea in her face and hit her in the left forearm with a metal pipe. She said that it hurt when defendant hit her with the pipe, but the wound did not bleed.
 

 After the defendant left for work, she prepared her children for school, dropped them off, then went to work. Ms. Clero-nay returned to her house with her children at approximately 5:30 or 6:00 p.m. because she had no other place to go. When she entered the house, she found defendant standing with his back against the wall and two hands underneath his shirt. She brought her kids to their room and headed toward the kitchen to use the phone.
 

 |4As Ms. Cleronay walked past the defendant, he sprayed her in the face with pepper spray. The spray hurt and prevented her from breathing. Ms. Cleronay stated that she knew it was pepper spray because defendant had threatened to use pepper spray on her earlier in the day. After the defendant pepper-sprayed her, he brandished a leather belt and struck her repeatedly on the right side of her head. Ms. Cleronay telephoned 911 while the defendant was still beating her with the belt. During the call, defendant left and Ms. Cleronay informed police that the defendant had fled from the residence in his cab.
 

 
 *733
 
 Thereafter, EMS arrived on the scene and treated Ms. Cleronay’s injuries. At trial, Ms. Cleronay identified the picture taken of the injuries to her hand and arm. She also identified photos taken that depicted injuries she sustained from the pepper spray. X-rays revealed no broken bones.
 

 On cross examination, Ms. Cleronay reiterated that defendant hit her left arm once with a metal pipe, which caused swelling in her arm. She also reiterated that defendant beat her all over her body with the leather belt, including her face. She stated that defendant hit her with his belt and caused her left hand to bleed and scratched her face. Ms. Cleronay admitted that she bit the defendant’s left thumb on June 11, 2008.
 

 Deputy Kevin McGuffie of the Jefferson Parish Sheriffs Office testified that, on December 19, 2008, he was dispatched to a disturbance call at 2256 Breckenridge Drive in Harvey, Louisiana. Upon his arrival, Deputy McGuffie observed an adult female victim, crying and tearful, who stated that she had been in an altercation with her boyfriend. The victim, who identified herself as Marie Cleronay, indicated that her boyfriend, Jean Boiteux, had fled the scene in his White Fleet taxi cab. Deputy McGuffie relayed that information to the Sheriffs Office dispatcher.
 

 | ^According to the information received from the victim, earlier that same day, her boyfriend and children’s father, Jean Boi-teux, abruptly entered the room in which she slept and stood at the foot of the bed yelling insults at her. To prevent him from waking their preschool-aged children, she left the room and defendant followed. When she fled to the garage, he picked up a metal pipe
 
 [4]
 
 and struck her on the left forearm. The defendant immediately left the residence. Ms. Cleronay did not call the police at that time.
 

 When Ms. Cleronay returned later that afternoon, Jean Boiteux was standing in the entryway of their house with “both of his hands tucked up underneath his shirt.” After she settled the children in their bedroom, she returned to the main living area of the house. When she entered the room, Boiteux removed one hand from underneath his shirt and sprayed Ms. Cleronay in the eyes, mouth, and nose with pepper spray.
 

 Ms. Cleronay recounted that, after Boi-teux pepper-sprayed her, he removed his other hand from underneath his shirt and produced a men’s leather belt. Boiteux proceeded to hit her with the belt. She showed cuts on her fingers consistent with wounds received in defending herself.
 

 Deputy McGuffie testified that he observed signs that were consistent with Ms. Cleronay’s account. Specifically, there was a large swollen area on one of her forearms and her face was covered with an orange film indicative of pepper spray. She also had cuts on her fingers and swelling on her cheekbone. Deputy McGuffie identified crime scene photographs, which depicted Ms. Cleronay’s left forearm in a splint, cuts on her left index finger, swelling of her left cheek bone, and treatment to remove pepper spray.
 

 |fiDeputy McGuffie received assistance in responding to the call from Detective Gregory Joerger. Detective Joerger observed Boiteux’s vehicle travelling northbound on Manhattan, initiated overhead lights and sirens, and stopped Boiteux. After stopping Boiteux and removing him from his vehicle, Detective Joerger noticed a brown leather men’s belt on the floor of the vehicle. Detective Joerger seized the belt then transported Boiteux to the crime
 
 *734
 
 scene where Ms. Cleronay identified him as her assailant.
 

 Deputy McGuffie identified the defendant in open court. Deputy McGuffie also identified the metal pipe, which was given to him as evidence of the crime by the victim on the night in question. On cross examination, Deputy McGuffie stated that he never found the pepper-spray can that defendant used.
 

 Defendant, Jean Boiteux, also testified at trial. He stated that he had known Ms. Cleronay since April of 2001 and that she had born him three children. He said that he never hit Ms. Cleronay with a metal pipe, and that she actually sustained the injury to her arm on December 15, 2008, when she fell through the ceiling above their garage. Defendant then stated that he never knew exactly what injury Ms. Cleronay sustained when she fell through the ceiling because she never told him. Defendant denied that he struck Ms. Cler-onay with a belt or sprayed her with pepper spray.
 

 Defendant further testified that he did not flee the crime scene on the evening in question because he did not realize that Ms. Cleronay had called the police. He said that if he had known that she had called the police, he would have remained at the home to give his side of the story. Defendant said that once Ms. Cleronay bit his thumb during an argument and that he spent 17 days at LSU Hospital after the bite became infected.
 

 |7On cross examination, defendant admitted that, on May 10, 2007, Ms. Cleronay called the police five times during an argument they were having and she claimed that he had hit her. Defendant agreed that Ms. Cleronay had called 911 to report him for domestic disturbances approximately 17 times during the 18 months that they had lived in Harvey. Defendant admitted that he had pled guilty to battery on a police officer in Florida in 1996. He also admitted that he was convicted of aggravated assault with a dangerous weapon and aggravated stalking in Florida in 1997. Based on the foregoing, the jury found defendant guilty of second degree battery.
 

 On appeal, defendant raises two assignments of error: first, defendant argues that the evidence was insufficient to support the verdict of guilty of second degree battery and second, his five-year sentence at hard labor is unconstitutionally excessive.
 

 In his first assignment of error, defendant argues that there was insufficient evidence to support the verdict of second degree battery because the State failed to establish that the victim suffered serious bodily injuries. The State contends, however, that the evidence does not have to support that element because second degree battery was a responsive verdict to the charged crime of aggravated battery, to which the defendant failed to object. The State concludes that the issue, therefore, is whether the evidence at trial is sufficient to find that the defendant committed aggravated battery.
 

 Our first inquiry is which elements the State must present to establish sufficient evidence. In
 
 State ex rel. Elaire v. Blackburn,
 
 424 So.2d 246, 251-52 (La.1982),
 
 cert. denied,
 
 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), the Louisiana Supreme Court explained:
 

 |sThe 1982 amendment adding Section C to Article 814 now gives the trial judge discretion, on motion of either side, to exclude a responsive verdict which is not supported by the evidence. Therefore, even if the offense is legislatively designated as responsive by Article 814, the defendant may timely object to an instruction on a responsive verdict
 
 *735
 
 on the basis that the evidence does not support that responsive verdict. If the court overrules the objection and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict'.... However, if the defendant does not enter an objection (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury.
 

 It would be unfair to permit the defendant to have the advantage of the possibility that a lesser ‘compromise’ verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object. Therefore, at least when the defendant fails to interpose a timely objection to a legislatively responsive verdict, this court will not reverse the conviction if the jury returns such a verdict, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged.
 

 In this case, defendant did not object to the trial judge’s jury instructions that included second degree battery as a responsive verdict to aggravated battery. Accordingly, as the State suggests, the defendant is entitled to a reversal of his conviction only if the evidence is insufficient to support a conviction of the charged offense, aggravated battery.
 
 See, State v. Austin,
 
 04-993 (La.App. 5 Cir. 03/01/05), 900 So.2d 867, 878.
 

 La. R.S. 14:33 defines battery as “the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.” La. R.S. 14:34 provides, “Aggravated battery is a battery committed with a dangerous weapon.”
 

 The standard for appellate review of the sufficiency of evidence is “whether, after viewing the evidence in the light most favorable to the prosecution, any [rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979);
 
 State v. Bailey,
 
 04-85, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-955,
 
 writ denied,
 
 04-1605 (La.11/15/04), 887 So.2d 476.
 

 In this case, the victim, Ms. Clero-nay, testified that on the morning of December 19, 2008, the defendant threw a cup of tea into her face, then hit her in the left arm with a metal pipe, causing her pain. Deputy McGuffie testified that when he met with Ms. Cleronay, one of her forearms appeared to be disfigured from an injury. The State presented a photograph of Ms. Cleronay’s arm in a splint and a photograph of the pipe identified by Ms. Cleronay as the pipe Boiteux used to strike her. A metal pipe has been considered a dangerous weapon for the purposes of an aggravated battery.
 
 See State v. Tyner,
 
 41,937 (LaApp. 2 Cir. 2/28/07), 953 So.2d 865.
 

 Ms. Cleronay further testified that, later in the day on December 19, when she returned to the family home with her children, the defendant pepper-sprayed her in the face. The spray hurt and prevented Ms. Cleronay from breathing. Deputy McGuffie stated that he saw that Ms. Cler-
 
 *736
 
 onay’s face was covered with pepper spray, which has a distinct color and odor. The State presented a photograph which showed Ms. Cleronay’s treatment by EMT’s to remove the pepper spray. This Court has acknowledged pepper spray as a “dangerous weapon.”
 
 See State v. Lemeunier,
 
 07-230 (La.App. 5 Cir. 5/27/08), 986 So.2d 130,
 
 writ denied,
 
 08-1403 (La.3/6/09), 3 So.3d 481 (pepper spray as “dangerous weapon” element of aggravated burglary).
 
 See also State v. Harris,
 
 42,376 (La.App. 2 Cir. 9/26/07), 966 So.2d 773,
 
 writ denied,
 
 07-2109 (La.3/28/08), 978 So.2d 304;
 
 State v. Johnson,
 
 31,390 (La.App. 2 Cir. 3/31/99), 730 So.2d 1035.
 

 | ^Finally, Ms. Cleronay testified that, after the defendant pepper-sprayed her, he beat her with a leather belt and metal belt buckle on the right side of her head. The leather belt described by Ms. Clero-nay was retrieved from the defendant’s vehicle shortly after he was apprehended by Detective Joerger. A photograph of the belt was entered into evidence. This Court has previously recognized that a belt can be used as a dangerous weapon for the purposes of aggravated battery.
 
 State v. Roberts,
 
 97-959 (La.App. 5 Cir. 2/25/98), 708 So.2d 1199.
 

 Although defendant denied ever hitting Ms. Cleronay and stated that her injuries resulted from a fall, the jury apparently did not find his testimony to be credible. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness.
 
 State v. Hotoph,
 
 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045,
 
 writ denied,
 
 99-3477 (La.6/30/00), 765 So.2d 1062,
 
 writ denied,
 
 00-0150 (La.6/30/00), 765 So.2d 1066. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency, and the credibility of witnesses will not be reweighed on appeal.
 
 Id.
 

 We find that, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found that the State presented the essential elements of aggravated battery beyond a reasonable doubt. Here, the State presented evidence that defendant intentionally used violence on Ms. Cleronay by striking her with a metal pipe and a leather belt, i.e., a dangerous weapon. Furthermore, the State presented evidence that defendant intentionally administered a noxious substance, i.e. pepper spray, to Ms. Cleronay. Based on our finding that the evidence was sufficient to support aggravated battery, this court will not reverse defendant’s conviction of second degree battery.
 

 |nIn his second assignment of error, defendant contends that his five-year sentence at hard labor is unconstitutionally excessive. However, we find that this argument is moot because defendant’s five-year sentence was vacated when defendant was sentenced as a multiple offender as noted in defendant’s appeal of that adjudication.
 
 [5]
 

 In
 
 State v. Jenkins,
 
 07-423, p. 8 (La.App. 5 Cir. 10/30/07), 970 So.2d 1166, 1170,
 
 writ denied,
 
 07-2243 (La.5/30/08), 983 So.2d 895, defendant argued that his underlying sentence was constitutionally excessive. This Court noted, however, that, once defendant was found to be a second felony offender, his underlying sentence was vacated and defendant was resen-tenced. This Court found that the defendant’s argument regarding his underlying
 
 *737
 
 sentence was moot since his underlying sentence was vacated.
 
 See also State v. Jackson,
 
 05-923, pp. 12-13 (La.App. 5 Cir. 3/28/06), 926 So.2d 72, 79,
 
 writ denied,
 
 06-1589 (La.1/8/07), 948 So.2d 121;
 
 State v. Hanson,
 
 00-1168, p. 4 (La.App. 5 Cir. 12/13/00), 778 So.2d 43, 45 (where this Court found the excessive sentences arguments relating to vacated sentences moot).
 

 Finally, as is our practice, the record was reviewed for errors patent, according to La.C.Cr.P. art. 920. Upon review, we note that the record does not reflect that the defendant was properly advised of the prescriptive period within which to file for post-conviction relief because, at defendant’s sentencing on the underlying conviction, the trial judge stated that the defendant had “two years to seek post-conviction relief.” La.C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. It is well-settled that a trial court’s La.C.Cr.P. art. 930.8 advisal is incomplete when the trial judge fails to advise a defendant that the | ^.prescriptive period begins to run from the date that his conviction and sentence becomes final.
 
 See, State v. Roche,
 
 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 767, 768,
 
 writ denied,
 
 06-1566 (La.1/8/07), 948 So.2d 120.
 

 Accordingly, by way of this opinion, we advise defendant that, under La.C.Cr.P. art. 930.8, no application for post-conviction relief, including an application seeking an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
 
 See, State v. Davenport,
 
 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445,
 
 writ denied,
 
 09-0158 (La.10/16/09), 19 So.3d 473. Defendant’s conviction is hereby affirmed.
 

 AFFIRMED
 

 [1]
 

 .
 
 See,
 
 Error Patent review,
 
 infra.
 

 [2]
 

 .
 
 See,
 
 La.C.Cr.P. art. 814(A)(14).
 

 [3]
 

 . On or about June 24, 2010, the State filed a bill of information alleging that defendant was a second felony offender. On February 3, 2011, the trial judge found that the State has presented sufficient proof that defendant had been convicted of two felony offenses and adjudicated defendant as a second felony offender. At that hearing, defendant's sentence for second degree battery was vacated and the trial judge imposed an enhanced sentence of nine years. In a separate appeal, defendant is seeking review of his multiple offender adjudication and enhanced sentence.
 

 [4]
 

 . The metal pipe that Boiteux used is described as a “floor jack for a vehicle.”
 

 [5]
 

 . According to URCA Rule 2-1.14, ”[a]ny record lodged in this court may, with leave of court, be used, without necessity of duplication, in any other case on appeal or on writ.”