958 So.2d 36 (2007)
STATE of Louisiana
v.
Edward MOORE.
No. 06-KA-875.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2007.
*38 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, *39 State of Louisiana, Terry M. Boudreaux (Appellate Counsel), Anne Wallis (Appellate Counsel), Laura Schneidau (Trial Counsel), Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee, The State of Louisiana.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant, Edward Moore.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and GREG G. GUIDRY.
SUSAN M. CHEHARDY, Judge.
The defendant, Edward Moore, appeals his conviction of distribution of cocaine within one thousand feet of a school and his enhanced sentence as a third-felony offender. We affirm.
On February 15, 2005, Edward Moore was charged by bill of information with violation of La.R.S. 40:981.3, distribution of cocaine within one thousand feet of a school. The defendant was arraigned on February 16, 2005 and pleaded not guilty. On May 31, 2005, the defendant's request for another attorney was denied. On June 2, 2005, the State amended the bill of information to state that the offense occurred on September 1 rather than September 11, 2004 as stated in the original bill, and to state that the offense occurred at Ames Elementary School.[1]
The case was tried on June 2 and 3, 2005 before a twelve-member jury, which found the defendant guilty as charged. The defendant filed a motion for new trial that was denied on June 13, 2005. He also filed a motion asking the trial court to consider State v. Dorthey, 623 So.2d 1276 (La.1993), prior to sentencing. After denial of his motion for new trial, the defendant waived sentencing delays by stating, "We are ready for sentencing." The trial court sentenced the defendant to imprisonment at hard labor for thirty-five years, with the first two years to be served without benefit of parole, probation, or suspension of sentence.[2]
On that same date, the State filed a habitual offender bill alleging the defendant to be a third felony offender, and the defendant stipulated to the multiple bill. The trial court vacated the original sentence and resentenced the defendant to imprisonment at hard labor for thirty-five years, to run concurrently with the sentence in case number 04-6678. In addition, the trial court denied the defendant's motion for Dorthey consideration as moot. The defendant filed a timely motion for appeal.[3]
*40 FACTS
Michelle Simmons of the Jefferson Parish Sheriff's Office (JPSO) testified that on September 1, 2004, she was working as an undercover agent in order to purchase illegal narcotics from street-level narcotics dealers. On that day, while driving an unmarked vehicle equipped with video and audio recorders, she observed a man, whom she later identified as the defendant, standing at the corner of Field and Eiseman Streets, a known drug area.
Agent Simmons made a hand motion indicating she wanted to purchase drugs, and the defendant approached the passenger side of her vehicle. She told the defendant she was looking for some "twenties." (She testified that is street slang for crack cocaine). Defendant said "okay" and told Agent Simmons to "make the block" (i.e., drive around the block). Agent Simmons complied, but when she returned, the defendant only had one crack cocaine rock. She told the defendant that she wanted two rocks, so the defendant told her to make the block again. When Agent Simmons returned, the defendant came back and handed her two crack cocaine rocks. Agent Simmons, in turn, gave the defendant forty dollars, twenty for each rock.
After the transaction, Agent Simmons departed the area and went to a safe location. She removed the videotape of the transaction from the video recorder and conducted a chemical field test on the substance the defendant gave her which was positive for cocaine. Following the test, Agent Simmons put the drugs in a bag and sealed it, retrieved her police radio, and provided the detectives monitoring the transaction a description of the defendant. She indicated that the defendant had braids in his hair and was wearing a red and blue bandana tied around his head, a jersey-style red, white, and blue shirt, blue jean shorts, and tennis shoes.
At some point later, Agent Simmons positively identified the defendant in a photographic lineup shown to her by Agent Corey Wilson. Agents Simmons and Wilson testified that the transaction occurred within one thousand feet of Ames Elementary School. The videotape of the transaction was played for the jury.
JPSO Agent Corey Wilson testified that on September 1, 2004, at approximately 4:00 p.m., he observed the transaction between Agent Simmons and the defendant. He was parked nearby in the event something went wrong. Agent Wilson testified that after Agent Simmons drove off the first time, he observed the defendant conduct a transaction with another black male, later identified as Kerry Williams. When Agent Simmons returned to the area, the defendant walked up to her vehicle and conducted a transaction with her. After Agent Simmons drove off, the defendant went back and conducted another transaction with Williams. Agent Wilson opined that Williams was the drug supplier.
Agent Wilson left the location but returned later. He spotted the defendant again on Field Street headed toward a Shell gas station where Deputy Perry Travis' marked unit was parked. Agent Wilson contacted Deputy Travis, gave him a description of the defendant, and told him that the defendant was riding a bicycle in Deputy Travis' direction. Agent Wilson subsequently observed Deputy Travis meet with the defendant, so he knew that Deputy Travis had stopped the right individual.
*41 JPSO Deputy Perry Travis testified that on September 1, 2004, at 5:00 p.m., he was parked at the Shell gas station in a marked unit a half a block from the intersection of Field and Eiseman when Agent Wilson radioed him. After he conversed with Wilson, he observed a man whom he believed to be the defendant ride a bicycle to the station, park it, and walk inside where Deputy Travis was located. Deputy Travis told the defendant he was going to conduct a field interview with him, and that he was going to check the computer to determine whether the defendant had any outstanding attachments. Deputy Travis subsequently took a Polaroid picture of the defendant, obtained his identification card, and wrote down pertinent information on a field interview card. When Deputy Travis learned that there were no outstanding warrants, he released the defendant.
Agent Wilson testified that the defendant was arrested on the instant charge at a later date.
Charles Krone, an expert in the field of the examination and identification of controlled dangerous substances, testified that the two off-white rock-like objects he tested in connection with this case were positive for cocaine and weighed 0.25 grams.
After the State concluded its case, the defendant rested without calling any witnesses.
ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment, the defendant asserts, "It was error for the trial court to improperly advise appellant concerning his right to represent himself with the result that the trial court effectively denied to appellant his constitutional right to represent himself."
The defendant argues the trial judge erred by giving improper advice to him after he indicated he wanted to represent himself. He contends that the trial judge erred by telling him that if he elected to represent himself, his movement in the courtroom would be restricted, and he would lose all of his appellate rights. He contends the trial court's errors effectively denied him his constitutional right to represent himself.
The State responds that the defendant failed to make a clear, unequivocal, and timely request to represent himself. The State further responds that the trial judge's advice to the defendant was proper, and that the defendant knowingly waived his right to self-representation.
According to the record, on February 16, 2005 the defendant was represented by Richard Tompson, an Indigent Defender Board (IDB) attorney, for the arraignment only. On that same date, the trial court ordered the appointment of another IDB attorney. On March 17 and April 18, 2005 the defendant appeared for trial with attorney John E. Benz, but the trial was continued both times at the request of defense counsel. On April 20, 2005 the defendant appeared for a motion hearing and a videotape viewing with Mr. Benz, but the hearing and viewing were continued at the request of defense counsel. The defendant appeared again with Mr. Benz on May 19, 2005 for trial, but the trial was continued at Mr. Benz's request.
On May 31, 2005, the defendant appeared in court for trial with Mr. Benz; however, he gave the trial judge a letter requesting another IDB attorney. In that letter, the defendant said he was requesting another attorney because his current attorney had only been to see him twice in the nine months he had been in jail. The defendant also said in the letter that his attorney had done nothing to help him and that his attorney was only interested in him pleading guilty instead of "observing *42 all the issues dealing with" his case. The trial court denied the defendant's request.
On the morning of trial, June 2, 2005, after the jury had been selected, defense counsel informed the trial judge that the defendant wanted to represent himself, and he moved that the defendant be allowed to do that. Defense counsel then requested a Faretta[4] hearing to ascertain whether the defendant understood that he was waiving his rights. The trial judge advised the defendant that he would be at an "extraordinary" and "extreme" disadvantage if he chose to represent himself. The judge pointed out to the defendant that the defendant did not know the rules of evidence and would not know appropriate times to object.
When the defendant interrupted him, the trial judge said that he was going to deny his motion unless the defendant listened to him. The trial judge continued by telling the defendant that he would not allow him to introduce inadmissible evidence simply because he was acting as his own attorney. He told the defendant it was his experience that the defendants who choose to represent themselves later regret that they waived their right to an attorney.
The judge then held an off-the-record bench conference with defense counsel and the prosecutor. The judge told counsel it was his understanding that, under Faretta, it was his duty to ensure that the defendant understood the rights he was waiving and the implications. Defense counsel agreed. The judge stated he was concerned that the defendant did not fully understand the implications of waiving his rights, and he noted that the defendant was intentionally looking away as though he was "not hearing." When the judge asked defense counsel if the defendant had responded, defense counsel replied that the defendant had responded "affirmatively" to each question.
The trial judge stated he was concerned that the defendant could not provide himself an adequate defense, but that the jurisprudence indicated the court had to give the defendant that opportunity even if he thought it was not in the defendant's best interest. The prosecutor opined, after observing the defendant over the prior two days, that the defendant was trying to obstruct the case from going forward, and that he was attempting to represent himself in the hope of getting his conviction overturned on appeal. She also noted that the defendant would be a security or flight risk if he had the opportunity to move about the courtroom as his own counsel.
Defense counsel said he thought the defendant had a "problem" with him and that was the defendant's motive in not talking to him and in asking for another attorney. He did not think the defendant was trying to subvert the system. The judge remarked that the defendant did not have a problem with defense counsel, and that the defendant was simply fearful, having seen the evidence. Defense counsel responded that the defendant wanted to make specific arguments about his case, and he did not think defense counsel would make them.
The trial judge believed that the defendant's complaints were baseless and that the defendant was more "disgusted with his predicament" than he was with defense counsel. He also believed that the defendant was "totally frustrated" and "perhaps despairing" that there was nothing he could do to extricate himself from his situation. Defense counsel said he thought the defendant had a right to represent himself as long as he was not disruptive and fully understood what he was doing.
*43 When the prosecutor asked how they were going to do that, noting that the defendant would "basically be standing on top of me when he's questioning witnesses," defense counsel responded, "[l]et him do it from the table." The judge noted that the defendant was facing an "enormous" amount of time if he was convicted, especially as a multiple offender. He further noted they had been warned that the defendant was "dangerous" and a "flight risk" and that his history indicated that they should be "concerned."
Following the bench conference, defense counsel conferred with the defendant and then informed the court that the defendant said he "understands." The judge subsequently told the defendant that he would not be free to move around the courtroom as his lawyer would. The defendant indicated he understood. The following exchange then occurred between the trial judge and the defendant:
THE COURT:
And do you understand, sir, that once you do this, this isn't going to allow you simply to raise an appeal assignment of error or to raise on appeal that you didn't have a lawyer, you understand that?
MR. MOORE:
Yeah.
THE COURT:
You will have waived your counsel and all of those claims are going to be out the window, claims related to not having a lawyer or not liking your lawyer or feeling that your lawyer is insufficient or that you don't have adequate assistance of counsel. Once you do this, you will have waived all of that, do you understand that, sir?
MR. MOORE:
You mean that I can't appeal it?
THE COURT:
Well, of course. You can't make the decision and then appeal your own decision which I've advised you 
MR. MOORE:
That's all right. I'm going to let Mr. Benz go on and do it.
THE COURT:
All right. I think you're very wise to do that.
MR. MOORE:
Yeah.
The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution give a defendant in a criminal prosecution the right to represent himself. However, because an accused managing his own defense relinquishes many of the traditional benefits associated with the right to counsel, he must knowingly and intelligently forego those benefits in order to represent himself. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
A waiver of counsel, in order that an accused may enter into self-representation, must be clear and unequivocal. State v. Ormond, 00-1371 (La.App. 5 Cir. 4/24/01), 786 So.2d 187, 191. Requests which vacillate between self-representation and representation by counsel are equivocal. State v. Leger, XXXX-XXXX (La.7/10/06), 936 So.2d 108, 147.[5] A defendant who vacillates between self-representation and representation by counsel cannot be said to have waived his right to learned counsel. State v. Treadway, 97-901 (La.App. 5 Cir. 03/25/98), 710 So.2d 1121, writs denied, 98-1634 (La.09/25/98), *44 725 So.2d 490, 00-1197 (La.1/12/01), 780 So.2d 1067. Courts must indulge in every reasonable presumption against a waiver of counsel. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
The right to self-representation is not absolute. A defendant must voluntarily and intelligently reject representation by an attorney and elect to conduct his own defense and must do so in a timely manner. Martinez v. Court of Appeal of California, 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000).
Once a defendant has clearly requested to represent himself, the trial court must determine whether the defendant is competent to waive counsel and is "voluntarily exercising his informed free will." State v. Santos, 99-1897 (La.9/15/00), 770 So.2d 319, 321, quoting Faretta, 422 U.S. at 835, 95 S.Ct. 2525. The competency at issue is a defendant's competence to waive the right to counsel and not his competence to represent himself. State v. Santos, supra at 321.
In accepting a waiver of counsel, the trial court should advise the defendant of the nature of the charges, the penalty range for the charges and of the dangers and disadvantages of self-representation, such as the failure to recognize objections to inadmissible evidence and the inability to adhere to technical rules governing trials. State v. Strain, 585 So.2d 540, 542-543 (La.1991). Additionally, the trial court should inquire into the defendant's age, education and mental condition and should determine according to the totality of circumstances whether the accused understands the significance of the waiver. Strain, 585 So.2d at 542. In order to sufficiently establish on the record that defendant is making an intelligent and knowing waiver, the inquiry should involve more than an interchange of "yes" or "no" responses from the defendant. Id.
There is no inflexible criteria or magic word formula for determining the validity of a defendant's waiver of the right counsel. Rather, the validity of the waiver must take into account the totality of the circumstances in each case. State v. Stevison, 97-3122 (La.10/30/98), 721 So.2d 843, 845. The failure of the trial court to secure a valid waiver of counsel constitutes reversible error. State v. Price, 96-680 (La.App. 5 Cir. 2/25/97), 690 So.2d 191, 196.
The first issue in the instant case is whether the defendant's request to represent himself was timely, clear, and unequivocal.
In State v. Lee, 39,969 (La.App. 2 Cir. 8/17/05), 909 So.2d 672, 680-681, writ denied, XXXX-XXXX (La.9/1/06), 936 So.2d 195, the defendant argued that he was denied the right to self-representation. In that case, the defendant appeared in court with IDB counsel numerous times over a 14-month period and never complained about his attorneys. On the day of trial, before the jury was selected, the defendant filed a pro se motion for self-representation in which he asked that his new trial IDB co-counsel be dismissed and that he be allowed to represent himself with court-appointed standby counsel. Id. at 680. The trial court denied the motion as untimely and disruptive to the trial process. The appellate court declined to second-guess the trial court's ruling. Id. at 681. It noted that the defendant had acquiesced in representation by the IDB throughout pretrial procedures, and that he waited until the morning of trial to assert for the first time his right to represent himself. The appellate court found that these circumstances indicated that the defendant's request was a delaying tactic and untimely. Id.
*45 In State v. Hegwood, 345 So.2d 1179, 1182 (La.1977), the Louisiana Supreme Court held that a criminal defendant who has acquiesced in the representation of counsel throughout pretrial proceedings, who for the first time requests to represent himself the morning of trial under circumstances which indicate that the request was a delaying tactic, and who makes no showing at all of any particular reason for his delay in asserting his right to self-representation, has impliedly waived that right.
In State v. Batchelor, 35,478 (La.App. 2 Cir. 5/10/02), 823 So.2d 367, 374-377, writ denied, 2002-2247 (La.3/14/03), 839 So.2d 32, the defendant argued that his conviction was obtained in violation of his right to self-representation. In that case, on the date that his trial was to begin, the defendant filed a motion to dismiss his counsel and to represent himself. Id. at 375. On that same date, defense counsel asked the court to appoint co-counsel or another attorney. Id. at 376. Prior to selecting the jury, the trial court held a hearing on those motions and found that nothing would adversely affect defense counsel's ability to proceed as effective counsel for the defendant.
The appellate court in Batchelor noted that the hearing was focused on the effectiveness of counsel and an alleged conflict of interest, and that the defendant did not assert a desire to represent himself at the hearing. Id. at 377. The appellate court found that the defendant's motion was a dilatory tactic as it was filed on the date trial was to begin. The appellate court also stated that it was questionable whether the defendant actually sought the right to represent himself. However, assuming the defendant did seek that right, the appellate court concluded that his vacillation between wanting to be represented by counsel and desiring to undertake his own defense, together with his failure to specifically assert this right at the hearing, constituted an implicit waiver of his request. Id.
In the instant case, we find that the defendant's request to represent himself was untimely, unclear, and equivocal. The defendant acquiesced in representation by the IDB throughout pretrial procedures until two days before trial, when he requested another attorney, and he waited until the day of trial after the jury was selected to request that he be allowed to represent himself. These facts suggest that the defendant's request for self-representation may have been a dilatory tactic. Additionally, the defendant's request occurred even later than the request in Lee, supra, where the appellate court found that the request was untimely. It is questionable whether the defendant wanted to represent himself, considering that he vacillated between wanting to be represented by IDB counsel, requesting another attorney, and then asking to represent himself.
Accordingly, we conclude the defendant impliedly waived his right to self-representation when he agreed to allow Mr. Benz to continue to represent him, so there is no merit to this assignment.
ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, the defendant contends the trial court imposed an excessive sentence. He argues that his thirty-five-year enhanced sentence is constitutionally excessive and that, considering his age, the sentence amounts to life imprisonment. He points out that he is a drug addict convicted of assisting a person he believed to be a fellow drug addict to acquire a small amount of a controlled substance. He contends he is not the most blameworthy of individuals, nor is the offense the most horrific.
*46 The State responds that the sentence was not constitutionally excessive, as it was on the lower end of the sentencing range. The State further responds that the defendant had an extensive criminal history, and that the jurisprudence supported the sentence.
The transcript of the plea colloquy indicates that the defendant agreed to the thirty-five-year enhanced sentence before he stipulated to being a third felony offender. Additionally, the waiver of rights form reflects that the defendant was advised and understood he would receive a thirty-five-year sentence in exchange for admitting his status as a third felony offender.
Under La.C.Cr.P. art. 881.2(A)(2), a defendant "cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This Court has consistently recognized that La. C.Cr.P. art. 881.2(A)(2) precludes a defendant from seeking review of an enhanced sentence to which the defendant agreed prior to pleading guilty. State v. Stewart, 03-976 (La.App. 5 Cir. 12/30/03), 862 So.2d 1271, 1277. Because the defendant received the same sentence that was "imposed in conformity with a plea agreement which was set forth in the record at the time of the plea," he is barred from challenging the excessiveness of his multiple offender sentence on appeal. State v. Goodwin, 05-51 (La.App. 5 Cir. 6/28/05), 908 So.2d 56, 59. Accordingly, there is no merit to this assignment.
ASSIGNMENT OF ERROR NUMBER THREE
The defendant requests an error patent review. However, this Court routinely reviews the record for errors patent, regardless of whether the defendant makes such a request. The review reveals errors patent in this case, none of which require corrective action.
The record does not contain the jury's written verdict, which apparently simply was not included in the record. However, "[t]here is no statutory or jurisprudential requirement that a written verdict be included in the record in a criminal case." State v. Clennon, 98-1370 (La.App. 5 Cir. 6/30/99), 738 So.2d 161, 165. Further, an omission from the record is not cause for reversal if that omission is immaterial to a proper determination of the appeal. State v. Brumfield, 96-2667 (La.10/20/98), 737 So.2d 660, 669, cert. denied, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999). The omission of the written verdict is not material to a proper determination of this appeal, because the jurors were polled in open court, and the trial judge stated that all twelve had concurred in reaching the verdict. Additionally, a review of the polling slips confirms the trial judge's statement. In light of the foregoing, this patent error needs no correction. State v. Champ, 01-434 (La.App. 5 Cir. 11/27/01), 803 So.2d 167, 170-171.
The State asserts in its brief that the trial court failed to properly inform the defendant of the prescriptive period for filing post-conviction relief, pursuant to La.C.Cr.P. art. 930.8. The record reflects that on June 13, 2005, the trial judge informed the defendant of the provisions of La.C.Cr.P. art. 930.8 after he imposed the original sentence. As the State noted in its brief, the trial judge did not inform the defendant of those same provisions after the defendant stipulated to the multiple bill and was re-sentenced. However, after the defendant subsequently pleaded guilty to an unrelated possession of cocaine charge in case number 04-6678 and was sentenced, the trial judge stated, "[O]n all matters today, I want to inform you that you have two years from the date your *47 conviction and sentences or your convictions and sentences become final in which to file for post-conviction relief."
In State v. Harris, 01-1380 (La.App. 5 Cir. 4/30/02), 817 So.2d 387, 389-390, the defendant alleged that the trial court failed to completely advise him of the prescriptive period for post-conviction relief at the multiple offender sentencing. However, the defendant acknowledged that the trial judge correctly advised him of the applicable prescriptive period at his original sentencing, but nevertheless requested that this Court require the trial court to give him the correct advice in writing. This Court found that La.C.Cr.P. art. 930.8 did not require a trial court to advise the defendant of the time limitations for filing post-conviction relief more than once and, therefore, remand in order for the trial court to provide the defendant with written instructions on La.C.Cr.P. art. 930.8 was unnecessary. Id.
In the instant case, because the trial judge properly informed the defendant twice on the same day of the provisions of La.C.Cr.P. art. 930.8, no corrective action need be taken.
The State asserts in its brief that the trial court failed to inform the defendant of the allegations of the multiple bill. La.R.S. 15:529.1 provides, inter alia, that the trial court shall inform the defendant of the allegations contained in the information and of his right to be tried as to the truth thereof according to law, and shall require the offender to say whether the allegations are true.
The record indicates that on June 13, 2005 the prosecutor advised the trial judge that she was filing a multiple bill alleging that the defendant was a triple offender. The prosecutor then informed the court that the defendant had two prior felony convictions, one being for possession of cocaine in Division I, case number 00-1772, where the defendant pleaded guilty on January 7, 2002 and received a two-and-a-half year sentence, and the other one for felony theft of goods, $100 to $500, in Division G, case number 97-0190, where the defendant pleaded guilty on February 20, 1997 and received a two-year suspended sentence and two years' active probation.
After being advised of those prior convictions, defense counsel said he had received a copy of the bill, and that the defendant wanted to stipulate to being a triple offender. Defense counsel said he had gone over the Boykin[6] form with the defendant and explained it to him, and that he felt that the defendant understood it. The trial judge then entered into a colloquy with the defendant wherein he advised the defendant, inter alia, that the defendant had a right to a hearing and the right to remain silent.
Because the prosecutor listed the allegations contained in the multiple bill in open court with the defendant and his counsel present, immediately prior to the defendant stipulating to the multiple bill, we find the defendant was properly advised of the allegations of the multiple bill in accordance with La.R.S. 15:529.1.
The State correctly notes in its brief that the trial court did not impose the first two years of the enhanced sentence without benefit of parole, probation, or suspension as required by the underlying statutes, La.R.S. 40:981.3(E) and La.R.S. 40:967(B)(4)(b). The restrictions on parole eligibility imposed on habitual offender sentences under La.R.S. 15:529.1 "are those called for in the reference statute." State v. King, 05-553 (La.App. 5 Cir. 1/31/06), 922 So.2d 1207, 1215, writ denied, *48 XXXX-XXXX (La.11/9/06), 941 So.2d 36 (citations omitted). The State also correctly notes in its brief that the trial court did not order the enhanced sentence to be served without benefit of probation or suspension of sentence in accordance with La.R.S. 15:529.1 G.
Nevertheless, these errors need not be corrected on remand. Under State v. Williams, 00-1725 (La.11/29/01), 800 So.2d 790, 799, and La.R.S. 15:301.1(A), the "without benefits" provision is self-activating. State v. Esteen, 01-879 (La. App. 5 Cir. 5/15/02), 821 So.2d 60, 78-79, writ denied, 02-1540 (La.12/13/02), 831 So.2d 983.
Finally, the State argues that the trial court failed to give the defendant credit for time served. However, failure of the trial court to give credit for time served requires no corrective measures. State v. Pascual, 98-1052 (La.App. 5 Cir. 3/30/99), 735 So.2d 98, 105. La.C.Cr.P. art. 880, as amended by Act 788 of 1997, effective August 15, 1997, makes credit for time served self-operating even on a silent record. Id. Therefore, although the trial judge did not state that the defendant was given credit for time served, credit will be given pursuant to La.C.Cr.P. art. 880 as amended. Id.
DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
GUIDRY, J., concurs with reasons.
GUIDRY, J., concurs with reasons:
I concur in the majority opinion. In my view, the advice given the defendant concerning his right to represent himself, when considered in context, was proper. Further, considering the minimal evidence presented to support the defendant's argument that his sentence is excessive, as well as his rather extensive prior record, I find the defendant's sentence to 35 years, at the lower end of the 30 to 90 year range, was not excessive.
NOTES
[1] The record does not reflect that the defendant was arraigned on the amended bill. However, because the defendant proceeded to trial without objection, he waived any irregularity in the arraignment. La.C.Cr.P. art. 555; State v. Echeverria, 03-898 (La.App. 5 Cir. 11/25/03), 862 So.2d 163, 169.
[2] Although the trial judge failed to impose the mandatory fine of $50,000.00 under La.R.S. 40:981.3, this defect became moot once the original sentence was vacated before the defendant was sentenced as a multiple offender. State v. Johnson, 03-903 (La.App. 5 Cir. 12/9/03), 864 So.2d 645, 647. Further, the habitual offender statute, La.R.S. 15:529.1, does not authorize the imposition of a fine, but only provides for enhanced sentences relating to the term of imprisonment. State v. Dickerson, 584 So.2d 1140 (La.1991) (per curiam).
[3] After the defendant's conviction and original sentencing, but before his sentencing as a multiple offender, the defendant orally advised the court he was going to file a motion for appeal. The record reflects that a written motion for appeal was filed on June 13, 2005, the same day the defendant stipulated to the habitual offender bill and was re-sentenced. The defendant's motion for appeal was premature when it was filed after conviction and sentence on the offense but before he was adjudicated to be a multiple offender. However, that procedural defect was cured by the subsequent re-sentencing. State v. Lyons, 01-719 (La.App. 5 Cir. 11/14/01), 802 So.2d 801, 807.
[4] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[5] A petition for certiorari was filed with the U.S. Supreme Court on November 29, 2006. (No. 06-8170).
[6] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).